AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black Toshiba 32gb Micro SD Card
SN: 1829AX6032A
("SD Card")

Case No. '21 MJ03085

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Brining in or harboring certain aliens |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Devan Greuel, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: May 13, 2021

*Judge's signature*

City and state: San Diego, California

Hon. Jill L. Burkhardt, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Devan Greuel, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

   a. Black Samsung Cellphone
      IMEI: 351767113928252
      ("Target Device" further described in attachment A-1)

   b. Black Toshiba 32gb Micro SD Card
      SN: 1829AX6032A
      ("SD Card" further described in attachment A-2)

   c. AT&T Prepaid Sim Card
      89014104272591658823
      ("Sim Card" further described in attachment A-3)

and to seize evidence of crimes, specifically violations of Title 8, United States Code, Sections 1324 as further described in Attachment B-1, B-2, and B-3. The requested warrant relates to the investigation and prosecution of Antonio HURTADO ("Defendant") for bringing thirty-two (32) individuals from Mexico into the United States. The Target Device, SD Card, and Sim Card are currently in the custody of Homeland Security Investigations.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, SD Card, and Sim Card it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3.   I have been employed as a Special Agent with Homeland Security Investigations (HSI) since March, 2020. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.   During my tenure with HSI, I have had training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking and human smuggling investigations, I have gained a working knowledge of the operational habits of human smugglers, in particular those who attempt to smuggle individuals into the United States from Mexico at sea.

5.   I am aware that it is common practice for human smugglers to work in concert utilizing cellular telephones.  A common tactic utilized by human smugglers is to smuggle individuals into the United States from Mexico by utilizing vessels.  I am aware that human smugglers in Mexico frequently communicate with the individual responsible for smuggling individuals into the United States.  These communications can occur before, during and after the individuals arrive in the United States.  For example, prior to the importation, human smugglers frequently communicate with the transporter(s) regarding arrangements and preparation for the smuggling operation.  When the importation is underway, human smugglers frequently communicate with the transporter(s) to remotely monitor the progress of the smuggling operation, provide instructions, and warn accomplices about law enforcement activity.  When the individuals have been smuggled into the United States, may communicate with the transporter(s) to provide further instructions regarding the pick-up locations, vehicles, or direct them to a destination within the United States.

6.   Subscriber Identity Module (SIM) cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers.  Such data includes user identity, location, and phone number, network authorization data, personal security keys, contact lists, and stored text messages.  Much of the evidence generated by

a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

7. SD Cards, also known as secure digital memory card(s) are devices used to store and transfer data. Most SD cards are used in smartphones and other mobile electronic devices for storage of photos, documents, or any other data a user wants to store. Most cellphones that use the Android operating system utilize SD cards as the main storage location for user data, instead of internal data storage. Evidence of a smugglers' activities while utilizing a cellular phone would likely be reflected in electronic data stored within the SD card utilized in mobile device.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s) and SD Card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in human smuggling may yield evidence:

    a. tending to indicate efforts to smuggle individuals from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of individuals from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of individuals from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of individuals from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device, SD Card, Sim Card; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.    On May 2, 2021, at approximately 10:00 a.m., the United States Coast Guard received a report of a vessel run aground approximately 50 yards from the shore near Point Loma, California. Shortly thereafter, it was reported that multiple individuals were in the water needing assistance. At approximately 10:33 a.m., the United States Coast Guard and other law-enforcement entities commenced a multi-agency, mass rescue operation. At the conclusion of this operation, 33 individuals were pulled out of the water. Three individuals were determined to be deceased. The remaining 30 individuals were transported by emergency medical personnel to nearby hospitals for evaluation and treatment.

10.    The United States Border Patrol identified the 30 rescued individuals as: Antonio HURTADO (Defendant), Everardo AMAYA Lopez (Material Witness 1), Francisco CARRENO Cruz (Material Witness 2), R. C. G.(Material Witness 3), Salvador PEREZ Cuellar (Material Witness 4), L. M. H. H. (Material Witness 5), Hector SANCHEZ Hernandez (Material Witness 6), Javier PALAFOX Cruz (Material Witness 7), Juana ROJAS Angel (Material Witness 8), Isaac GARCIA Orozco (Material Witness 9), Fernando TAPIA Torres (Material Witness 10), Fabian RAMIREZ Fernandez (Material Witness 11), Fidel HERNANDEZ Martinez (Material Witness 12), Jose GOMEZ Hernandez (Material Witness 13), Ivan JUAREZ Hernandez (Material Witness 14), Julio ZUNIGA (Material Witness 15), Luz SANCHEZ Hernandez (Material Witness 16), R.I.D.G. (Material Witness 17), Maricela VALENTIN Bangel (Material Witness 18), Jose GARCIA Isidro (Material Witness 19), Eberardo VILLALVA Vasquez (Material Witness 20), Isaac MARTINEZ Rodriguez (Material Witness 21), Maria ISIDRO Garcia (Material Witness 22), Florentino MARTINEZ

Gomez (Material Witness 23), Edgar AVALOS Enriquez (Material Witness 24), Deyaneira MIRON Avelar (Material Witness 25), David MIRON-Lopez (Material Witness 26), an unidentified individual herein referred to as John DOE (Material Witness 27), Amilcar NATUL Mateo (Material Witness 28), Eduardo HERNANDEZ Martinez (Material Witness 29). Fingerprints were taken from the three deceased individuals, and by comparison with immigration records and identification found on the individuals, agents determined their identities to be Maricela HERNANDEZ Sanchez (deceased), Victor PEREZ Degollado (deceased), Maria Eugenia CHAVEZ Segovia (deceased), all of whom were Mexican citizens without legal right to enter or remain in the United States.

11. After being released from various hospitals, agents conducted videotaped interviews of Material Witnesses (MW) 1-26; MW 27 and MW 28 are still receiving medical attention and are not yet in federal custody; MW 29 was released from the hospital and currently is not in federal custody. MW 1-26 stated that they were citizens of Mexico, and MW 28 stated he is a citizen of Guatemala. All admitted that they lacked lawful documents to enter or reside in the United States. The complainant states that MW 1-26 and 28 are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is material; that it is impractical to secure their attendance at trial by subpoena; and that they are material witnesses in relation to these criminal changes and should be held or admitted to bail as prescribed in Title 18 United States Code, Section 3144.

12. During their videotaped statements, the material witnesses admitted that they were paying between $15,000 and $18,500 to be smuggled into the United States. The material witnesses were shown a six-pack photograph line-up with Defendant's picture and MW 1-7, MW 9-14, MW 17-20 and MW 22-25 identified Defendant as the captain and the individual who piloted the vessel from Mexico into United States territorial waters. MW 8, MW 15, MW 16 and MW 21 failed to identify anyone depicted in the photographic lineup as the captain.

13. While at the Imperial Beach Border Patrol Station, United States Border Patrol Agents were attempting to place leg shackles on HURTADO's right ankle when HURTADO deliberately struck one of the Border Patrol Agent Xalick J. Castorena in the head with his knee. Agent Castorena suffered slight redness on his forehead and a burning sensation.

14. HURTADO was placed under arrest for violation of 8 U.S.C. § 1324 and 18 U.S.C. § 111.

15. The Target Device was found and seized by a Homeland Security Investigations Agent from the Defendant. Defendant was shown the phone and positively identified the phone as belonging to him.

16. The SD Card and Sim Card were found in Defendant's wallet located among personal property that had been seized from him.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device, SD Card, and Sim Card. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device, SD Card, and Sim Card to communicate with others to further the importation of illegal aliens into the United States. Further, in my training and experience, human smugglers may be involved in the planning and coordination of a human smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device, SD Card,

and Sim Card for data beginning on April 4th, 2021 up to and including May 4th, 2021.

## METHODOLOGY

18.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.     Following the issuance of this warrant, I will collect the Target Device, SD Card, and Sim Card and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety 90 days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.    Law enforcement had previously obtained a search warrant for the items described as "Target Device", "SD Card", and "Sim Card". This warrant was signed on May 4th, 2021, by United States Magistrate Judge Hon. William V. Gallo. Law Enforcement did not execute these warrants due to a clerical error noticed by Law Enforcement in the Attachments Section.

### CONCLUSION

22.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device, Sim Card, and SD Card will yield evidence of Defendant's violations of Title 8, United States Code, Sections 1324. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A-1, A-2, A-3, and seize the items listed in Attachment B-1, B-2, B-3 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Devan Greuel
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 13th day of May, 2021.

_____
Honorable Jill L. Burkhardt
United States Magistrate Judge

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Black Toshiba 32gb Micro SD Card
    SN: 1829AX6032A
    ("SD Card")

The Target Device is currently in the possession of Homeland Security Investigations.

## ATTACHMENT B-2
ITEMS TO BE SEIZED

Authorization to search the electronic storage device namely a Black Toshiba 32gb Micro SD Card described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in Black Toshiba 32gb Micro SD Card for evidence described below. The seizure and search of the Black Toshiba 32gb Micro SD Card shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Black Toshiba 32gb Micro SD Card will be electronic records, electronic data such as photographs, audio files, videos, and location data, for the period of April 4th, 2021 up to and including May 4th, 2021:

a. tending to indicate efforts to smuggle individuals from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of individuals from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the smuggling of individuals from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of individuals from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Black Toshiba 32gb Micro SD Card; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 8, United States Code, Sections 1324.